**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | |
| | | **Case No.: RDB-19-597** |
| **MICHAEL WEDINGTON, Jr.,** | * | |
| **Defendant.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION AND ORDER**

Pending before me is the defendant Michael Wedington Jr.'s Emergency Motion for Detention Review, ECF No. 19, which he filed on July 16, 2020. The government filed an opposition to the pending motion on July 20, 2020, ECF No. 20. There will be no hearing. The motion is denied.

On December 17, 2019, Wedington was charged by indictment with conspiracy to commit carjacking in violation of 18 U.S.C. § 2119 (Count I), carjacking in violation of 18 U.S.C. § 2119 (Counts II and V), kidnapping in violation of 18 U.S.C. § 1201(a)(1) (Count III), and possession and brandishing of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Counts IV and VI). ECF No. 8.

On December 18, 2019, Wedington appeared for his initial appearance on the indictment and a detention hearing. After considering the Pretrial Services Report, the proffers and arguments from counsel, and the defendant's proposed release plan, I issued an Order of Detention. ECF No. 14. I found by clear and convincing evidence that Wedington's release would pose a danger to the community and that there was no condition or combination of conditions that would reasonably assure the safety of the community. I stated my reasons on the record, and I listed my findings in

the Order of Detention, nothing that the § 924(c) charges trigger a presumption of detention under 18 U.S.C. § 3142(e). I did not find that Wedington poses a risk of non-appearance.

In the pending motion, Wedington seeks to reopen the detention hearing in light of the COVID-19 pandemic. Def.'s Mot. 1. He asks the Court to "release him to home detention during the COVID-19 pandemic" and pending his September 21, 2020 trial date, pursuant to 18 U.S.C. § 3142(f) and/or (i).

Under Section 3142(f), a detention hearing

> may be reopened . . . if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).

At the time of Wedington's detention hearing in December 2019, no one knew that three months later there would be a public health emergency due to a worldwide pandemic that poses a potential threat to everyone, including pretrial detainees. Therefore, the Court will reconsider its decision, taking the current public health crisis into account. *See United States v. Jefferson*, No. CCB-19-487, 2020 WL 1332011, at *1 (D. Md. Mar. 23, 2020) (noting that the COVID-19 public health crisis is a factor to consider); *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3–4 (D. Md. Mar. 17, 2020) (same).

In his motion, Wedington raises constitutional challenges to his continued pretrial detention during the pandemic. I will first address the Bail Reform Act factors, taking into account COVID-19, and then address the constitutional arguments.

**The Bail Reform Act**

Under the Bail Reform Act, when a defendant is charged with "an offense under section 924(c)" of Title 18, as Wedington is, and the Court finds probable cause to believe the defendant committed the crime, there is a presumption, subject to rebuttal by the defendant, that "no combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(B). The presumption of detention "places 'a limited burden of production—not a burden of persuasion' on the defendant to 'com[e] forward with evidence that he does not pose a danger to the community or a risk of flight.'" *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018) (quoting *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011)). When the defendant meets his burden of production, it "remains a factor to be considered among those weighed by the district court" but "does not eliminate the presumption favoring detention." *Id.* (quoting *English*, 629 F.3d at 319).

The government bears the burden of proving by a clear and convincing showing that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f); *see Khusanov*, 731 F. App'x at 21 (noting that the "ultimate burden" of proof remains on the government to "mak[e] . . . a clear and convincing showing that he presents a danger to persons or the community").

The Bail Reform Act requires consideration of the following factors: "the nature and circumstances of the offense charged," "the weight of the evidence against the person," the person's history and characteristics, and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

If, upon consideration of these factors, the Court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any

other person and the community," then the Court "shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). Alternatively, if the Court finds that there are conditions or a combination of conditions that will reasonably assure the person's appearance and the safety of any other person and the community, the person may be released subject to certain conditions. 18 U.S.C. § 3142(c)(1).

The Supreme Court has held that pretrial detention is disfavored. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). In *Salerno*, the Supreme Court ultimately approved pretrial detention based on dangerousness, but the Court was clear that the Bail Reform Act is preventative, rather than punitive, in nature. *Id.* at 747–48. Consistent with the Supreme Court's holding, the Bail Reform Act states that nothing in it "shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

<u>**Analysis of Bail Reform Act Factors**</u>

<u>Personal History and Characteristics, Mental and Physical Health, and Employment History</u>

Michael Wedington is only 19 years old. He is a Baltimore native and lifelong resident of the city. He was raised by his grandmother and mother. He maintains regular contact with them, his father, his sister, and his girlfriend, all of whom live in Baltimore. He has no children.

Wedington graduated from high school and attended Lincoln Technical Institute for six months. He was enrolled in a one-year automotive mechanic program, but he withdrew from the program before completion. Wedington has worked for Walmart, Jiffy Lube, and Gray and Son Construction. He has supplemented his income by performing mechanic work.

Wedington reported to Pretrial Services that he is in excellent health, except that he has situs inversus, a congenital condition in which the major visceral organs are reversed from their normal positions. He reported he does not experience any health issues related to the condition

and is not taking any medications.  His mother verified his medical condition and added that he has two holes in his heart.  She stated that he has a cardiac exam every four years and is due for one this year.  Wedington has been diagnosed with Attention Deficit Hyperactivity Disorder, but he has no other mental health history.

Wedington reported that he smokes marijuana daily and was prescribed a medical marijuana card for pain management.  He does not consume alcohol.

<u>Criminal History and Prior Performance Under Court Supervision</u>

Wedington has three prior convictions: 1) a 2019 conviction for falsification of a license plate for which he received one year of probation, which he subsequently violated; 2) a 2019 theft between $100 and $1,500 conviction for which he received a suspended six-month sentence and two years of probation; and 3) a traffic offense, driving on public and private property, for which he received 10 days of confinement.

<u>Nature and Circumstances of the Offense</u>

The nature and circumstances of the alleged offenses are very serious and dangerous. According to the government's proffer, Wedington and co-conspirators committed two armed carjackings two days apart in June 2019.  The carjackings were not spontaneous or random.  They were planned.  Wedington allegedly attracted the victims by offering to sell them tools on the internet via an application called "OfferUp."  The victims responded to the online posting and met Wedington and his co-conspirators at a location near Wedington's home, expecting to purchase tools.  Instead, upon arrival at the meet location, the victims' cars and personal belongings were stolen at gunpoint.  One victim was forced into the backseat of his van, kidnapped by the men, and ordered to give them the pin number for his ATM card.  One of the carjackers placed a gun in the victim's mouth as he went through his pockets.

Weight of the Evidence

The weight of the evidence appears strong.  Wedington was identified in a photo array by one victim as one of the carjackers.  The second victim, who also was shown a photo array, said he was 80% sure Wedington was one of the carjackers.  The second victim's car was recovered several weeks after the carjacking and a latent print matching Wedington was found inside the car. After officers searched Wedington's home pursuant to a search warrant, they recovered a handgun and 1,000 rounds of ammunition.  A search of Wedington's phone revealed that he used the OfferUp application to communicate with the victims and orchestrate the carjackings.  Also found in Wedington's phone were pictures of him posing with firearms.

Nature and Seriousness of Danger to the Community

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(4).  Here, the nature of the danger that would be posed by Wedington's release is armed carjacking and the use of firearms to commit violent crimes against unwitting fellow citizens.  The seriousness of this potential danger cannot be overstated.  Although Wedington has no prior history of committing violent crimes, has strong family support in his mother and grandmother, and is only 19 years old, the alleged violent acts against the victims are extremely concerning and raise serious public safety concerns.

COVID-19

Wedington asks the Court to reconsider its detention decision and release him from Marshals custody because of the global pandemic.  He argues that the Maryland Department of Public Safety and Correctional Services (DPSCS), the agency responsible for the Chesapeake Detention Facility (CDF), where he is detained, is "taking inadequate precautions to prevent the

virus from spreading" and that DPSCS is "unable to adequately deal with COVID-19."  Def.'s
Mot. 2, 4.  He also argues that he "suffers from a myriad of health conditions, many of which
would be worsened and potentially fatal should he contract COVID-19 during his period of pre-
trial detention."  *Id.* at 6.  Wedington has "silus inversus totalis, which involves a transposition of
his abdominal organs."  *Id.* at 6–7.  As a result of this condition, his "heart is not located in the
usual location within his chest cavity."  *Id.* at 7.  He also has a "heart murmur, which causes him
frequent shortness of breath and other respiratory deficiencies."  *Id.*  He attaches to his motion
medical records from 2010 and 2011 confirming his diagnosis of silus inversus totalis.

I will first address the COVID-19 situation at the jail where Wedington is detained.  As of
today, there is no report of a COVID-19 outbreak at CDF.  According to the DPSCS website, as
of August 3, 2020, 202 CDF staff members have been tested for COVID-19, with 31 testing
positive.[1]  There have been 326 detainees tested and six have tested positive, including five who
have recovered.  According to reports from the U.S. Marshals, positive detainees have been
isolated during their illness and recovery.  The Court recognizes that the virus spreads more quickly
and efficiently in confined spaces like pretrial detention facilities, but the current rate and number
of infections at CDF is quite low.  In addition, there is a 14-day quarantine policy for all new
detainees, which appears to minimize the chances that the virus will spread from them to the
general population.

I next address Wedington's medical condition.  I have reviewed the Johns Hopkins medical
records, including the record from a May 4, 2011 cardiac follow-up visit when Wedington was an
eleven-year-old sixth grader.  Def.'s Mot. Ex. A, ECF No. 19-1, at 2. The records confirm that

---

[1] *See* DPSCS COVID-19 Updates, https://news.maryland.gov/dpscs/covid-19/, last visited Aug. 7,
2020.

Wedington has situs inversus and a heart murmur. The May 4, 2011 record of the cardiac follow-up visit states: "there have been no respiratory issues" to raise concerns; "no specific cardiorespiratory symptoms reported by the family other than an episode of shortness of breath in gym class on one occasion, relieved by rest for a few minutes"; he "has demonstrated normal growth and growth and development"; and "[n]o other major clinical issues are noted in the review of systems form in the office chart." *Id.* In the final assessment, the physician stated:

> Michael has the previously recognized silus inversus totalis, but no evidence of intracardiac structural or functional abnormality. He is accordingly discharged from cardiac care unless there should be any new concerns. Findings were reviewed with mom. The importance of attention to potential respiratory recurrent infection was emphasized and should be a source of referral to Pulmonary Medicine should this be noted. No other restrictions or cautions were advised.

*Id.* at 3. Wedington has not submitted any other medical records.

Wedington claims that his health conditions "would be worsened and potentially fatal should he contract COVID-19 during his period of pre-trial detention." Def.'s Mot. 6. I note that his medical conditions are not listed on the website for the Centers for Disease Control and Prevention (CDC) as conditions that will or may increase one's risk of severe illness from COVID-19. In any event, I have no evidence before me that Wedington's medical condition has worsened since he was discharged from cardiac care at 11 years old. As for respiratory concerns, I have no medical records to indicate that Wedington currently suffers from a serious respiratory disease that would make him more susceptible to serious illness or death if he contracted COVID-19. He reported to Pretrial Services in December that he is in excellent physical health and does not experience any health issues related to situs inversus. I must conclude, therefore, that Wedington's current physical health does not cut strongly in favor of release. This is especially the case in light of the current COVID-19 situation at the CDF.

**Temporary Release**

Wedington also asks for temporary release during the COVID-19 pandemic.  Def.'s Mot.

1.  The Court may permit temporary release to a third-party custodian on a determination that

"such release [is] necessary" for a "compelling reason."  18 U.S.C. § 3142(i).  To determine

whether the COVID-19 pandemic presents a "compelling reason" to release a defendant

temporarily, the Court considers

> the severity of the risk that the COVID-19 virus poses to the defendant, given his
> existing medical conditions and the current COVID-19 situation at the facility
> where he is being held, and whether that risk, balanced against the other Bail
> Reform Act factors, rises to the level of a "compelling reason" for temporary
> release under 18 U.S.C. § 3142(i).

*United States v. Creek*, No. 20-4251 (4th Cir. Apr. 15, 2020), ECF No. 402 in *United States v.*

*Creek*, No. CCB-19-36 (D. Md.).  In this analysis, "the court must still consider the danger to the

community or risk of flight that would be posed by the defendant's release as analyzed under the

factors set forth in 18 U.S.C. § 3142(g)."  *United States v. Creek*, No. CCB-19-36, 2020 WL

2097692, at *3 (D. Md. May 1, 2020).  "The defendant bears the burden of demonstrating a

compelling reason."  *Id.*

Wedington has not met his burden of establishing a compelling reason for temporary

release.  The reasons for the initial detention order remain strong.  He has not shown that his

medical condition increases his risk of serious illness or death from COVID-19, and the number

and rate of infections at CDF among staff and detainees is relatively low.

## Constitutional Arguments

Wedington argues that his pretrial detention during the pandemic violates his rights under the Fifth and Eighth Amendments to the Constitution.[2]  In support of his Fifth Amendment argument, he claims that the "division of corrections is unable to adequately deal with COVID-19." Def's Mot. 4.  He cites the number of infections among staff and inmates in the state prison system.  He also claims that "staff members at D.O.C. themselves have come forward with information about the failure of D.O.C. to follow even the most basis recommendations from Governor Hogan and the CDC." *Id.*  Finally, he argues that "confining inmates to their cells for a period of 14 days . . . is very much punitive." *Id.*

Under the due process clause of the Fifth Amendment, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  To prevail on a Fifth Amendment due process claim, "a pretrial detainee must show unconstitutional punishment by proving that the challenged conditions were either '(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred.'" *Williamson v. Stirling*, 912 F.3d 154, 178 (4th Cir. 2018) (quoting *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 251 (4th Cir. 2005)).  The absence of adequate medical care may constitute a form of

---

[2] The Eighth Amendment protections apply to individuals who have been convicted and sentenced. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).  For federal pretrial detainees such as Wedington, the due process protections of the Fifth Amendment apply.  *See id.* at 535 & nn.16–17; *United States v. Moran*, No. SAG-19-0585, 2020 WL 1663366, at *2 (D. Md. Apr. 3, 2020); *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020).  Therefore, I will address Wedington's Fifth Amendment argument.  The protections are equivalent, if not greater, under the Fifth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 & n.6 (1983); *see also Hicks v. James*, 255 F. App'x 744, 748 (4th Cir. 2007) ("As a federal civil detainee, Hicks' claim properly arises under the Due Process Clause of the Fifth Amendment; nevertheless, the legal standard employed for civil commitment claims under the Due Process Clause is largely the same as that used in analyzing prisoners' Eighth Amendment claims.").

punishment. *See United States v. Wallen*, 177 F. Supp. 2d 455, 458 (D. Md. 2001) (citing *Gray v. Farley*, 13 F.3d 142, 146 (4th Cir. 1993)). A pretrial detainee makes out a due process violation "if he shows deliberate indifference to serious medical needs." *Id.* To prove deliberate indifference when, as here, the health concern is the threat posed by COVID-19, the defendant must show that the pretrial detention facility "recklessly disregard[ed] th[e] risk" that the COVID-19 pandemic posed to detainees. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Duvall v. Hogan*, No. ELH-94-2541, 2020 WL 3402301, at *11 (D. Md. June 19, 2020).

Wedington does not argue that CDF's current conditions, policies, and practices with respect to COVID-19 are "imposed with an expressed intent to punish." *Williamson*, 912 F.3d at 178. Rather, he appears to allege that the current COVID-19 conditions, policies, and practices at CDF are "not reasonably related to a legitimate nonpunitive governmental objective." He also appears to argue that CDF is deliberately indifferent to his serious medical needs. These arguments are unpersuasive.

Wedington does not identify specific deficiencies with the current policies and practices at CDF with respect to COVID-19. Nor does Wedington allege that he is currently in need of medical care. He appears to speculate that he would not receive adequate medical care if he were to contract COVID-19. There is no evidence before me to support this assertion. Wedington has not established that CDF has been deliberately indifferent to his medical needs or has recklessly disregarded the risk that the COVID-19 pandemic poses to him or other detainees.

Wedington also claims that a 14-day period of isolation for positive detainees is punitive. This argument, too, in unpersuasive. Wedington has not contracted the virus (thankfully), and he has not been ordered to isolate for 14 days in a cell. Even if he had, a 14-day period of isolation for people who test positive for COVID-19 is recommended by the CDC and other public health

officials to prevent the spread of the virus.  I recognize that self-isolating in the comfort of one's home is far more comfortable than enduring isolation in a cell.  However, the 14-day period of isolation required for positive detainees is "reasonably related to a legitimate nonpunitive governmental objective," which is preventing the spread of the virus.  Moreover, imposition of periods of isolation for positive detainees, among other measures, demonstrates that the facility is taking precautionary measures for, rather than recklessly disregarding, the risk that the pandemic poses.  *See Farmer*, 511 U.S. at 834.  No due process violation has been established.

In conclusion, after consideration of all of the factors in the Bail Reform Act, I find by clear and convincing evidence that Wedington's release would pose a danger to the community.  I further find that there is no condition or combination of conditions that would reasonably assure the safety of the community.

## ORDER

For the reasons stated in this Memorandum Opinion and Order, it is, this 7th day of August, 2020, hereby ORDERED that Michael Wedington's Emergency Motion for Detention Review, ECF No. 19, is DENIED.

_____/S/_____
Deborah L. Boardman
United States Magistrate Judge